**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERTO VALDEZ,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.:** |
| **v.** | : | |
| | : | **2:12-CV-7168-CDJ** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

**Jones, II      J.**

**May 9, 2016**

**MEMORANDUM**

Now pending before the Court is Defendant City of Philadelphia's Third Motion for Summary Judgment (hereinafter "MSJ") (Dkt No. 28), including Defendant's Statement of Facts (hereinafter "D.'s SOF") (Dkt No. 28-1), Plaintiff's Response in Opposition[1] (hereinafter "Resp.") (Dkt No. 36), and Defendant City of Philadelphia's Reply (Reply) (Dkt No. 39). Because an ancillary issue regarding the admissibility of the "Collaborative Reform Initiative's Assessment of Deadly Force in the Philadelphia Police Department," (hereinafter "DOJ Report), arose in the course of summary judgment briefing, also pending before the Court is Defendant's Memorandum of Law Regarding Admissibility of the DOJ Report (hereinafter "Def.'s Mem.") (Dkt No. 33), Plaintiff's Supplemental Brief on the Admissibility of the Collaborative Reform Initiative Report on Philadelphia Police Department's Use of Deadly Force (hereinafter "P.'s Mem.") (Dkt No. 34), and Plaintiff's Supplemental Brief (hereinafter "P.'s Supp.") (Dkt No. 40).

For the reasons that follow, the DOJ Report will be deemed admissible and summary judgment will be denied.

---

[1]      Plaintiff failed to include in his initial Response a separate Statement of Undisputed and/or Disputed Material Facts responding to the moving party's facts and setting forth, in separate numbered paragraphs, Additional Disputed Material Facts. See Policies and Procedures for Judge C. Darnell Jones, II, Civil Cases, Section D.2 (available at https://www.paed.uscourts.gov/documents/procedures/jonpol.pdf). The Court therefore Ordered Plaintiff to refile in compliance with the Policies and Procedures. (Dkt No. 35.) Although Plaintiff then responded to Defendant's Statement of Facts, again Plaintiff failed to include Additional Disputed Material Facts in numbered paragraphs, despite including a "Counter Statement of Facts" in paragraph form. This failure makes it difficult for the Court to review and cite to the pertinent facts; and additionally making it difficult for Defendant to reply in a coherent manner to the facts. The Court generously considers Plaintiff's filing nonetheless, but directs Plaintiff to comply with this Court's Policies and Procedures moving forward or else the filings will be stricken.

## **BACKGROUND**

There is significant disagreement about the events on December 24, 2010, that allegedly resulted in serious injury to Plaintiff Roberto Valdez. It is undisputed that on December 24, 2010, Christina Bacci, a Sunoco gas station attendant, called police when she witnessed Plaintiff sitting in his vehicle for 10-15 minutes at the station. (Bacci Dep. at 18:5-15.) The eye witness accounts of what happened next sharply diverge. Ms. Bacci testified that officers arrived at the gas station, approached Plaintiff's vehicle and began banging on the window. (Bacci Dep. at 18:5-15.) After banging on the window "a couple of times, the officers then "busted the window and drug [sic] [Mr. Valdez] out of the car." (Bacci Dep. at 26, 35.)  After they had extracted him from the vehicle, "[t]hey started hitting him [and] yanking him by his belt" while "[h]e was laying [sic] motionless on the ground." (Bacci Dep. at 26, 35.) Ms. Bacci testified that the officers beat Plaintiff "[f]or a couple minutes" in total. (Bacci Dep. at 36.) She also testified that the officers did not strike Plaintiff with any objects. (Bacci Dep. at 38.)

The officers' version of the facts paints a starkly different picture. Officer Quinn testified that Plaintiff appeared to be asleep when the officers arrived. (Quinn Dep. at 28:17.) Officer Duffy entered the rear driver's side door, which was unlocked, reached onto Plaintiff's lap and removed a needle and what appeared to be narcotics. (Quinn Dep. at 29:13.) He then shook Plaintiff in an attempt to wake him up. (Quinn Dep. at 28:1-17.) Plaintiff awoke and threw a punch at Officer Duffy. (Quinn Dep. at 30-31.) Quinn stated that Officer Duffy and Plaintiff began to "grapple" at which point Quinn fired his Taser two or three times into Plaintiff's left shoulder. (Quinn Dep. at 32.) Duffy was able to release himself from Plaintiff's hold, exited the vehicle and shut the front driver's side door. (Quinn Dep. at 28:5.) Officer Quinn walked to the front of the car and broke the front driver's side window using his baton. (Quinn Dep. at 29:13.) Officer Duffy pulled Plaintiff out of his vehicle, at which point Plaintiff began "grappling" with Duffy again. (Quinn Dep. at 38:21.) In response, Officer Quinn struck Plaintiff several times in the back and in the head with his baton while Plaintiff's "arms were being held by Officer Duffy." (Quinn Dep. at 44:1-14.) Plaintiff fell to the ground unconscious. (Quinn Dep. at 45:5.) Officer Quinn testified that he was unsure as to whether the officers "said anything [to Plaintiff]" before they used physical force on him. (Quinn Dep. at 39:14, 40:16.) Plaintiff was hand-cuffed and taken to a hospital for treatment.

Plaintiff subsequently filed a complaint on December 24, 2012. Plaintiff alleges that the City is liable under 42 U.S.C. § 1983 for failure to train and discipline its officers, which ultimately led to the injuries Plaintiff sustained. Pending before the court is the City's third partial motion for summary judgment. The two issues before the court are whether the DOJ's report is admissible evidence, and whether the Plaintiff met his burden in establishing a § 1983 claim against the City.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." Halsey v. Pfeiffer, 750 F.3d 273 (3d Cir. 2014) (quoting Petruzzi's IGA Supermarkets v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993)).

## DISCUSSION

Before proceeding to the merits of Plaintiff's Monell claim, the Court considers an evidentiary issue: whether Plaintiff may enter in to evidence the Collaborative Reform Initiative's Assessment of Deadly Force in the Philadelphia Police Department (hereinafter "DOJ

Report") (Exhibit N). Because the DOJ Report is admissible, the Court then considers the Motion for Summary Judgment in light of the DOJ Report.

## I.   The Report is Admissible

Defendant City of Philadelphia offers several grounds for excluding the Report. Defendant initially challenges the relevance of this material under Federal Rule of Evidence 401, then asserts that the report contains foundation-less expert testimony in violation of Federal Rule of Evidence 702, and finally, argues that the Report is a "subsequent remedial measure" prohibited from introduction into evidence by Federal Rule of Evidence 407 and "public policy." (Def.'s Mem.) None of these arguments is availing.

### A.   The Report is Relevant

Under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401. The Report—which reviewed the training offered to Philadelphia Police Department members—clearly satisfies the requirements of Rule 401. Its conclusions and recommendations bear directly on the probability that the Department had insufficient training programs, which is clearly a fact of consequence in this Monell Action. Accordingly, the Court will not exclude the Report on this basis.

### B.   The Report Falls Under an Exception to the Rule Against Hearsay Pursuant to 803(8)(C)

Hearsay—an out of court statement offered for the truth of the matter asserted—is only admissible as evidence in certain circumstances. FED. R. EVID. 802 (permitting hearsay where provided for by the Federal Rules of Evidence, statute, or rules prescribed by the Supreme Court of the United States). Federal Rule of Evidence 803 permits the admission of hearsay that consists of "a record or statement of a public office if it sets out […] in a civil case […], factual findings from a legally authorized investigation and the opponent does not show that the source of the information or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8)(A)(iii)-(B).

The Court finds that the Report at issue satisfies all the relevant portions of 803(8). There has been no challenge to the legality of the investigation or its qualification as a "public statement" within the meaning of the Rule, and the objecting party has not proffered any

evidence that would indicate a lack of trustworthiness. Accordingly, the Court finds that the Report qualifies for admission under Federal Rule of Evidence 803(8).

### C. The Report is Admissible Under 702

Rule 702 provides the framework by which a district court evaluates the admissibility of expert testimony. Under the Rule, a witness, qualified "by knowledge, skill, experience, training or education," may testify if her testimony is the "product of reliable principles and methods" and she has "reliably applied the principles and methods to the facts." FED. R. EVID. 702. Defendant asserts that the Report should be excluded because it has not had the opportunity to challenge the qualifications of the Report's authors, question the reliability of the authors' methodology, or cross examine the Report's findings themselves. (Def.'s Mem. 3-4.) The Court finds Defendant's arguments unavailing.

The Court finds that its decision is guided by Clark v. Clabaugh, 20 F.3d 1290 (3d Cir. 1994), which interprets an earlier but substantially similar version of Rule 803(8). In that case, the Third Circuit considered whether the trial court abused its discretion in admitting a report prepared by the Pennsylvania State Police in the wake of racial strife in Hanover, Pennsylvania. Id. at 1294. In determining that it was admissible, the Court noted that the Report, as the product of officers charged with a legal duty to conduct the investigation, "is presumed admissible under 803(8)(C), including its opinions, conclusions and recommendations, unless the defendants demonstrate its untrustworthiness." Id. The Court explained further that admission of the report pursuant to 803(8)(C) "does not on its face require that one who undertakes the investigation and authors the report to be qualified as expert before the report becomes admissible." Id. However, in order to make a challenge to qualifications, the Court held, a party challenging a report "must come forward with some evidence which would impugn [the report's] trustworthiness." Id. at 1295. Ultimately, the Third Circuit upheld the admission of the report based on the district court's finding that "no special bias impeded a fair investigation or entered into the preparation of [the report]." Id.

Like the objecting party in Clark, Defendant has failed to offer any evidence that would impugn the impartiality, reliability, or trustworthiness of the investigation. Put simply, Defendant has pointed to absolutely no evidence that the Report's authors did anything that would raise suspicions about the veracity of the Report.  Accordingly, the Court rejects the Defendant's

challenge to the Report's admissibility, predicated on a challenge to the qualifications of the individuals who authored the Report.

### D.  The Report is Not Excluded Under 407 as a Subsequent Remedial Measure

Rule 407 prohibits the introduction of a subsequent remedial measure to prove negligence or culpable conduct. The parties' dispute on this issue boils down to the characterization of the Report. On one hand, Defendant asserts that the Report is part and parcel of a larger program of remedial measures, and is thus properly excluded under Rule 407. (Def.'s Mem. 4.)   Plaintiff, on the other hand, asserts that the findings represent merely an evaluation of the Police Department's practices between 2007 and 2013, and that any findings are not actually remedial. (Pl.'s Mem. 8.)

In relevant part, Rule 407 provides that "when measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct." FED. R. EVID. 407. The Report *itself* does not contain any measures that would have made Valdez's alleged violation any less likely to occur; only the Philadelphia Police Department's decisions to *implement* those recommendations would have done so. Instead, the Report is more appropriately viewed as a sort of "step zero"— providing facts, data, and conclusions that would guide future policy decisions, but not the policy decisions themselves.[2]  Accordingly, the Court finds that the Report does not consist of any subsequent remedial measures that would prohibit their introduction into evidence under Rule 407.

## II.    Defendants Are Not Entitled To Summary Judgment On Plaintiff's *Monell* Claim

Plaintiff advances a <u>Monell</u> claim predicated on Defendant's failure to properly train and discipline its police officers.[3] The Court finds that there exist genuine issues of material fact that

---

[2]      As the Notes of the Advisory Committee recognize, "courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees, and the language of the present rules is broad enough to encompass all of them." FED. R. EVID. 407 advisory committee's note. The examples given have a critical commonality – they involve an actual improvement to the alleged deficiency. Here, there was no change made, only an external audit by a third party recognizing that change is warranted, which Defendant is free to adopt or not. This type of audit, without an actual change to remedy the culpable conduct, is not excluded. It is not soliciting an opinion on whether a guardrail is warranted that we want to protect, it is actually putting up a guardrail to save future lives that is the desired, and therefore protected, conduct.

[3]      Plaintiff asserts a <u>Monell</u> claim based on both failure to train and failure to discipline. (Compl. ¶ 31-32.) Defendant only moves for summary judgment based on the failure to train theory of liability. (MSJ.) Although Defendant dedicates one conclusory sentence to the failure to discipline in its Reply only, this is insufficient to meet the threshold for summary judgment. (Reply ¶ 3.) Therefore, Plaintiff's failure to discipline theory moves forward.

make summary judgment inappropriate at this juncture. Accordingly, for the following reasons, Defendant's Motion for Summary Judgment will be denied.

### A. Defendant is Not Entitled To Summary Judgment On The "Failure-To-Train" Theory

A municipality, and its agencies, may be liable under section 1983 where the entity has a policy or custom which violates a plaintiff's constitutional rights. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). "[T]here are limited circumstances in which an allegation of failure to train can be the basis for liability under § 1983." City of Canton v. Harris, 489 U.S. 378, 387 (1989). A district court must look to (1) whether the training program is adequate and (2) whether any inadequate training "can justifiably be said to represent city policy." Id. at 390 (internal quotations omitted). In other words, a municipality will only be liable for inadequate training if, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. "Courts should be careful not to impose liability merely because municipal training *could* have been more thorough or comprehensive – that question will almost always be answered in the affirmative. Rather the question is whether the training *should* have been more thorough or comprehensive, an inquiry that focuses on the deliberate indifference standard." Id. at 392. In its Third Motion for Summary Judgment, Defendant asserts that it is entitled to summary judgment because Plaintiff has failed to provide sufficient evidence of "deliberate indifference" and proximate cause.

### i. There Is A Genuine Issue Of Material Fact With Respect To Defendant's "Deliberate Indifference"

The Court finds that its decision in this matter is controlled by the Third Circuit's decisions in Thomas v. Cumberland Cnty., 749 F.3d 217 (2014). [4] In Thomas, the Third Circuit

---

[4]     Defendant's Reply Brief has so seriously misrepresented the holdings of Thomas as to call into question Defense Counsel's credibility with the Court. Counsel cited Thomas v. Cumberland Cty., 749 F.3d 217, 233 (3d Cir 2014), as direct support for the proposition that "[w]ithout a record evidence [sic] of a pattern of similar constitutional violations, a Monell claim will fail." (Def.'s Reply ¶ 3.) As an initial matter, the Court notes that Thomas is printed between pages 217 and 227 in the Federal Reporter, Third Series. Although willing to indulge a certain degree of unwitting error, the Court finds that its misgivings about Counsel's candor are exacerbated by the fact that Thomas stands for the direct opposite of the proposition for which Counsel cites it. In Thomas, the Third Circuit stated, "[T]he Supreme Court posited in Canton that in certain situations, the need for training can be said to be so obvious that failure to do so could properly be characterized as 'deliberate indifference to constitutional rights' *even without a pattern of constitutional violations*." 217 F.3d at 223 (emphasis added). The Thomas court even went

considered two questions: (1) whether a single-incident could provide the factual basis for a Monell failure-to-train claim, and (2) whether failure to implement sufficient de-escalation training, specifically, could form the basis of a failure-to-train claim. The Court answered both questions in the affirmative. Id. at 224, 226-27. In that case, the plaintiff, a prisoner at the Cumberland County Correctional Facility, suffered severe injuries—including the loss of sight in one eye—while correctional officers watched and failed to contain the outbreak of violence. Id.at 220-21. Thomas brought a Monell failure-to-train claim predicated on Cumberland County's failure to properly train its correctional officers in conflict de-escalation and intervention techniques.

The Third Circuit vacated the district court's decision to grant summary judgment in the County's favor. First, the panel easily dispensed of the initial question before it—whether a single incident could form the basis of a failure-to-train claim. It answered the question in the affirmative, citing its prior decision in Berg v. Cnty. of Allegheny, 219 F.3d 261, 266 (3d Cir. 2000). Id. at 224. The panel then turned to whether failing to provide de-escalation training could

---

on to adopt a test for determining when a single-incident suffices to indicate a failure to train. Id. at 223-24 ("Liability in single-incident cases depends on 'the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'") (quoting Bryan Cnty. v. Brown, 520 U.S. 397, 409 (1997)). Moreover, Thomas explicitly notes that its holding permitting single-incident claims is in line with previous Third Circuit cases. Id. at 224 ("We have previously found that a single-incident constitutional violation was sufficient to preclude summary judgment on a failure-to-train claim against a municipality.").

In addition, Counsel represents that Lamont v. New Jersey, 637 F.3d 177, 186 (3d Cir. 2011), "hold[s] failure to deescalate could not be a proximate cause to an unconstitutional use of force." In actuality, the Court held the exact opposite, requiring the issue to return to the court; to decide statements defendants remained justified in their excessive use of force as the events transpired. Lamont, 637 F.3d 18 ("the Court erred in ruling for the [defendants] on the plaintiff's claim that the force became excessive as the events transpired . . . it will be up to a jury to make that decision.")

Further, Counsel represents that Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999), supports the proposition that "no court in this country has even held that an officer is required to attempt to de-escalate a situation." In actuality, Abraham v. Raso is another case where the Third Circuit reversed a District Court grant of summary judgment in favor of defendants in order for a jury to decide whether the use of force against plaintiff was reasonable considering a totality of the circumstances, including conduct leading up to the use of force. Abraham, 183 F.3d at 291. Specifically, the Court explains that "'Totality' is an encompassing word. It implies that reasonableness should be sensitive to all of the factors bearing on the officer's use of force." Id. The Third Circuit's decision suggests that a Court should consider whether the officer failed to de-escalate the situation as it is part of the totality of the circumstances, again, contrary to Counsel's use of the case.

It is without question that "attorneys owe a duty of candor to the Court to not knowingly: make a false statement of material fact or law to the court; fail to correct any false statements previously made; or offer evidence that the lawyer knows to be false." United States v. Kubini, 304 F.R.D. 208, 225 (W.D. Pa. 2014) (citing Pa. R. Prof. C. 3.3(a)(1), (3)). Although this Court will give Counsel the benefit of any doubt that he did not intentionally misrepresent the law, Counsel is strongly admonished to ensure that he prevents issues like this in future filings before this Court.

form the basis of a failure to train claim. Id. at 224-26. Again, the Court answered in the affirmative. Id. at 226.

   In so doing, the panel characterized the state of Supreme Court precedent on this issue as a sort of continuum. On one side, the Court noted, was the Supreme Court's seminal decision in City of Canton v. Harris, which the Court characterized as a case involving the "plainly obvious need to train armed police officers in the constitutional limitations on the use of deadly force." Id. at 225. On the other side, the Court explained, was Connick v. Thompson, a case which featured "the lack of such an obvious need [as compared to Canton], where prosecutors had a legal education and ethical obligations and the allegedly necessary training was nuanced." Id. The Third Circuit concluded that the facts before it in Thompson were more like those presented to the Supreme Court in Canton:

> Like the police officers in Canton, corrections officers have no reason to know how or when to de-escalate a conflict to avoid a constitutional violation for failure to protect. Given the frequency of fights occurring between inmates in the [Cumberland County Correctional Facility] that could lead to constitutional violations for failure to protect, the lack of training here is akin to a failure to equip law enforcement officers with specific tools to handle recurring situations.

Id. The panel also went on to contrast to the case before it with Connick. The Court explained that the "officers here have no reason to have an independent education, knowledge base, or ethical duty that would prepare them to handle the volatile conflicts that might lead to inmate-on-inmate violence." Id. Ultimately, the court vacated the district court's order granting summary judgment, holding that a reasonable jury could find that the county's failure to train in de-escalation tactics constituted deliberate indifference. Id. at 226.

   The Court finds that the facts before it, like those in Thomas, create a genuine issue of material fact with respect to the level of training in de-escalation tactics offered to the police. Here, Plaintiff has adduced enough evidence of a lack of training in de-escalation tactics that a reasonable jury could determine that Defendant's failure to train constituted deliberate indifference on the Philadelphia Police Department's part. (Ex. N at 5 ("[O]fficer's do not regularly receive in-service training on threat perception, decision making, and de-escalation."); Ex. N at 6 ("PPD officers do not receive in-service defensive tactics training."); Ex. N. at 41 ("Instructors should train students not only when and how to use force, but when and how *not* to use force and to de-escalate, verbally and tactically, if appropriate.") (emphasis in original). The Court is particularly troubled by the Department of Justice's finding that Defendant fails to

provide consistent training in its use of force policies. (Ex. N at 40 ("PPD officers do not receive regular, consistent training on the department's deadly force policy…[W]e detected a divergence between PPD officer perspectives and PPD policy on the appropriate use of deadly force. This was most pronounced in our interviews with recruit graduates, patrol officers, and sergeants.") In light of these findings, the Court concludes that there exists a genuine issue of material fact concerning Defendant's deliberate indifference. Like the Third Circuit stated in Thomas, a reasonable jury could conclude that the lack of training here is "akin to a failure to equip law enforcement officers with specific tools to handle recurring situations." Thomas, 749 F.3d at 225. Therefore the Court will deny summary judgment.

### ii. Defendant Has Failed to Show That It Is Entitled To Summary Judgment With Respect To Proximate Cause.

Defendant argues that it is entitled to summary judgment because Plaintiff has failed to provide sufficient evidence of causation under Canton v. Harris, 489 U.S. 378, 291 (1989). (Reply ¶ 1.) In so arguing, Defendant relies on two primary assertions: that (1) "no court in this country has even held that an officer is required to attempt to de-escalate a situation; and, (2) "numerous courts have held that an officer's acts which *escalate* a situation cannot be the foundation for an excessive force claim." (Reply ¶ 1.) Based on these premises, Defendant contends that "it is clear that a failure to receive de-escalation training cannot be the cause of an officer's excessive use of force." (Reply ¶ 1.) Defendant's argument is wholly unavailing: not only does it rely heavily on case law that does not support its assertions, but its argument is irrelevant to the Monell causation inquiry.

Defendant's argument relies heavily on case law that does not support the proposition for which it is cited, is wholly irrelevant to the issue before the Court, or both. For example, undeterred by the fact that the Third Circuit's opinion makes no mention of a "failure to train" claim, or any other Monell claim for that matter, Defendant cites Lamont v. New Jersey, 637 F.3d 177 (2011) for two propositions: (1) "numerous courts have held that an officer's acts which escalate a situation cannot be the foundation for an excessive force claim;" (2) "failure to deescalate could not be a proximate cause to [sic] an unconstitutional use of force." (Reply ¶ 2.) Even assuming that this case was not factually and legally distinguishable from the one at bar, only the most tortured reading of Lamont could support Defendant's interpretation of the holding. In Lamont, the Third Circuit *explicitly stated* that "a jury should decide whether the

force became unreasonable some time [after the officers' initial use of deadly force]—*i.e.*, whether the officers' should have ceased firing their weapons before they did." <u>Lamont</u>, 677 F.3d at 179. In so stating, the Third Circuit made clear that police conduct, immediately after a reasonable use of force, which escalates the use of force could become unreasonable and thus form the basis of an excessive force claim—which directly contradicts Defendant's offered interpretation of the case. Moreover, the Third Circuit never addressed whether a "failure to deescalate" could satisfy the proximate cause requirement in an excessive force case. The Court only held that the defendant's own "noncompliant, threatening conduct" was the proximate cause of his injuries in a claim for excessive force; the court *never addressed* proximate cause in the context of a <u>Monell</u> claim, or any other part of a <u>Monell</u> cause of action, because no <u>Monell</u> claim was before the circuit court. <u>Id.</u>at 186.

Beyond offering extremely weak legal support for its assertions, Defendant fails to properly address the causation issue. Again, the Court turns to <u>Thomas v. Cumberland Cnty.</u>, 479 F.3d 217 (3d Cir. 2014). In that case, the Third Circuit explained that "to sustain a claim based on a failure to train theory, the identified deficiency in the training program must be closely related to the ultimate constitutional injury." <u>Id.</u>at 226. This inquiry "focuses on whether the 'injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect.'" <u>Id.</u> (quoting <u>Canton</u>, 489 U.S. at 391). This requires the Court to "'[p]redict how a hypothetically well-trained officer would have acted under the circumstances." <u>Id.</u> Defendant's argument fails to address this inquiry, offering no evidence or argument that a well-trained officer would have taken the same action as those at issue in this case. Accordingly, the Court finds that it has failed to meet its initial burden to demonstrate that it is entitled to judgment as a matter of law and that there exist no genuine disputes of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment will therefore be denied on these grounds.

## CONCLUSION

Based on the foregoing analysis, Defendant City of Philadelphia's motion for summary judgment is denied.

An appropriate order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. DARNELL JONES, II      J.